IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| FARZIN AZIMA ) | |
| ) | |
| ) | |
| Plaintiff ) | Civil Action No. 07-2204-KHV |
| ) | |
| v. ) | |
| ) | |
| ) | |
| GERARD HEINAUER ) | |
| Director, Nebraska Service Center, et al. ) | |
| ) | |
| Defendants ) | |

## SUGGESTIONS IN SUPPORT OF
## <u>PLAINTIFF'S MOTION FOR SUMMARY JUDGEMENT</u>

This is a claim brought by plaintiff, Farzin Azima, against Defendants, who represent various agencies of the United States government, primarily the Department of Homeland Security and the Federal Bureau of Investigation. These agencies are all and each in some way involved in the process of naturalization, for which Plaintiff had made application. Plaintiff asserts that the government acting by and through the named defendants has failed to render a decision on his application within 120 days of his interview as required by law. 8 U.S.C. §1447(b).

The government has not made a decision on Plaintiff's application because it claims that it is waiting the results of what it terms "name checks", which are accomplished by the Federal Bureau of Investigation. The regulations applicable

to this process which were enacted well after Plaintiff had his interview on his application, presently call for the these background name checks to be completed prior to interviews taking place.

The District Court has jurisdiction over Plaintiff's naturalization application at this point and has the option of either setting a hearing to review the naturalization application de novo or remand the matter back to the Citizenship and Immigration Service (CIS) with appropriate instructions to complete the adjudication of the filed application.

## INTRODUCTION AND UNCONTROVERTED FACTS

The facts of this case are simple and will not be contested.

Plaintiff, a lawful permanent resident of the United States residing in Overland Park, Johnson County, Kansas filed an Application for Naturalization with the CIS on October 19, 2001 and after processing by the CIS which included criminal background check through his fingerprints, he had his interview on his application on May 15, 2002 at which time he passed the English and United States history and government tests.

He subsequently received a notice of a Naturalization Oath ceremony set for May 24, 2002 and that he appeared on the date of the set ceremony, but he was then informed that he would not be allowed to attend the ceremony and take the oath of citizenship because of the the pendency of an additional security check, herein referred to as the "name check."

Subsequent that date, in response to multiple inquiries to the CIS by Plaintiff and the undersigned counsel, Defendant CIS indicated that no decision on Plaintiff's application could be made because of the continued pendency of Plaintiff's additional security name check.

Plaintiff has complied with all requests made by the CIS to complete all of the necessary biometric and fingerprint appointments and has provided all of the information requested by the agency and has complied with all appointment notices requested of him.

## STANDARD FOR SUMMARY JUDGEMENT

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgement is appropriate if there are no genuine issues of material fact and the moving party is entitled to judgement as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-248 (1986). The initial burden is on the moving party to establish the absence of a genuine issue of material fact, but once the moving party shows that there are no material issues of fact in dispute, the burden shifts to the non-moving party to set facts showing there is a genuine issue for trial.

## STATUTORY SCHEME

When a lawful permanent resident wishes to apply for naturalization to United States citizenship, he or she files a Form N-400 application.   8 U.S.C. §1445(a), 8 C.F.R. §334.2.   An investigation is conducted into the criminal background of the applicant and as well  potential immigration violations, etc. 8 U.S.C. §1446(a); 8 C.F.R. §335.1.  When the investigation is completed, then an interview is scheduled by the CIS and the necessary tests are administered. 8 U.S.C. §1446(d); 8 U.S.C. §1423(a); and 8 C.F.R. §312.3(a). An alien applicant

needs to establish five primary things to be eligible for naturalization. He or she must be a lawful permanent resident (LPR) of the United States; that he or she has met the statutory residence requirements (either three years for LPRs married and living with United States citizen spouses or five years); with his or her having more than one-half of that required time in physical presence in this country; that he or she has resided continuously in the United States since the date of application; and that he or she is a person of good moral character.  8 U.S.C. §1427(a).

Once the examination is completed, the CIS has 120 days in which to make a decision on the application.. If a decision is not made, then the applicant may petition to the District Court for a de novo hearing on the application and the court may either determine the matter or remand the case to the CIS with appropriate instructions.  8 U.S.C. §1447(b)

## THIS COURT HAS SUBJECT MATTER JURISDICTION
## UNDER SECTION 8 U.S.C. §1447(b)

This Court has subject matter jurisdiction over this lawsuit under Section 8 U.S.C. §1447(b), which reads as follows:

"If there is a failure to make a determination under section 1446 of this title before the end of the 120-day period after the date on which the examination is conducted under such section, the applicant may apply to the United States district court for the district in which the applicant resides for a hearing on the matter. Such court has jurisdiction over the matter and may either determine the matter or remand the matter, with appropriate instructions, to the Service to determine the matter."

This law is very clear in identifying precisely when a naturalization applicant can ask the District Court to intervene and decide the case due to agency

delay. A plain reading of §1447(b) indicates that Congress expressly provided for a consequence should the CIS fail to act and make a determination on a N-400 application within 120 days of the applicant's examination, which is that he or she may then apply to the appropriate district court for relief.

The examination contemplated by §1446 authorizes the CIS examiner subpoena power to call witnesses, including the applicant, to compel testimony and to require the production of tangible items. The examiner is authorized to conduct an investigation of the applicant,  8 U.S.C. §1443(a), 1446(a)-(b), and to determine whether the applicant meets the statutory qualifications for naturalization. 8 U.S.C. §1427. The applicable rules and regulations propagated by the Attorney General, provide that prior to conducting an examination interview of the applicant, the CIS is to have completed the FBI criminal background investigation before the applicant is notified to appear for the initial examination interview. 8 C.F.R. §335.2(b).

There have been some courts , such as in *Danilov v. Aguirre*, 370 F. Supp.2d 441 (E.D. Va. 2005) which looked to the language of §1446(b) to conclude that the required examination is not a single event, but instead is essentially a process followed by the agency to gather information concerning the applicant and that the time for filing an action under 8 U.S.C. §1447(b) would not commence until the examination process was completed, even if the CIS completed the applicant interview prior to the completion of the background investigation. See however the case of *Etape v. Chernoff*,    F.3d    , (4th Cir. Aug. 2, 2007), holding to the contrary and effectively negating *Danilov*.

However, not holding to the district court judgement in *Danilov*, supra, most other courts have found that the 120 day period starts on the date on which the examination is conducted based upon the statutory language which contemplates

that the examination occurs on a particular and identifiable date. A sample of these cases are as follows:  *El-Daour v. Chertoff*, 417 F.Supp.2d 679, 681 (W.D. Pa. 2005) (*explicitly finding that the interview date was the date of "examination" under 8 U.S.C.§1447(b))*:; *Kheridden v. Chertoff*, No. 06-4792, 2007 WL 674707 (D.N.J. Feb 27, 2007)*(finding that the word "examination" in §1447(b) refers to the examination, not the examination process)*; *Khelifa v. Chertoff,* 433 F.Supp.2d 836 (E.D.Mich 2006)*(finding that the word "examination" in §1447(b) refers to the examination)*; *Al-Kudsi v. Gonzales*, No. CV.05-1584, 2006 U.S. Dist. LEXIS 16761, 2006 WL 752556 (D.Or. Mar 22, 2006)*(finding that the word "examination" in §1447(b) refers to the examination)*; *Shalan v. Chertoff,* No. 05-10980, 2006 U.S. Dist LEXIS 253, 2006 WL 42143 (D.Mass. Jan 6, 2006); *Essa v. U.S. Citizenship & Immigration Servs.*, No. 05-1449 (DSD/JJG), 2005 U.S. Dist. LEXIS 38803, 2005 WL 3440827 (D.Minn. Dec. 14, 2005)*(finding that the word "examination" in §1447(b) refers to the examination)*; *Khatib v. Barrows,* No. CIV-06-1403-M (D.Ok. July 25, 2007)*(finding that "examination referred to the interview and does not encompass the FBI background check)*; *Attisha v. Jenifer*, No. 07-CV-10345, 2007 U.S. Dist. LEXIS 65761(S.D.Mich. Sept 6, 2007)*(explicitly finding the "examination" referred to in §1447(b) refers to the interview and that the 120-day period ran from date of initial interview)* ; *Ghanim v. Gonzales*, No. C07-594MJP, 2007 WL 2288059 (W.D. Wash. Aug 6, 2007)*(finding that the court has jurisdiction over the naturalization application if no decision is made within 120 days of the examination)*; *Castracani v. Chertoff*, 377 F. Supp.2d 71 (D.D.C. 2005) *(initial interview date as trigger);  Angel v. Ridge*, No. 2004-CV-4121-JPG, 2005 WL 1263143 (S.D. Ill May 25, 2005) *(explicitly finding the 120-day period ran from date of first interview, not a rescheduled interview); Mohsen v. Gonzalez,* 2007 U.S. Dist. Lexis 52341 (D.N.J. July 18, 2007)*(finding that the court has jurisdiction over the naturalization application if no decision is made within 120 days of the examination)*. Other cases similar holding district court jurisdiction and adopting the majority view

include the following cases: *Farooq v. Hansen*, No. 1:07-CV-0241 JM (CAB), 2007 WL 1974943 (S.D. Cal. July 2, 2007); *Farisi v. Mueller*, 492 F.Supp2d 335 (S.D. N.Y. 2007); *Mahd v. Chertoff*, No. 06-CV-01023-WDM-PAC, 2007 WL 891867, D. Colo. March 22, 2007);  *Hussein v. Gonzales*, 474 F.Supp.2d 1265 (M.D. Fla. 2007); *Nagem v. United States*, 480 F.Supp.2d 877 (N.D. Tex. 2007); *Hussein v. Gonzales*, No. 306-CV-497J-32MCR, 2007 WL 328691, (M.D. Fla. Jan. 31, 2007); *Affaneh v. Hansen,* No. C-3-06-267, 2007 WL. 295474, (S.D. Ohio, Jan 29, 2007);*Al-Ashwan v. Chertoff,* No. 06-1303, 2007 U.S. Dist. LEXIS 8677 (E.D. Mo. Feb. 7, 2007); *Manzoor v. Chertoff*, 472 F.Supp.2d 801 (E.D. Va. Feb 5, 2007); *Khan v. Chertoff*, No. CV-05-00560, 2006 U.S. Dist. LEXIS 48937, 2006 WL 2009055 (D.Ariz. July 14, 2006); ; *Meyersick v. U.S. Citizenship & Immigration Serv.*, No. CA 05-398, 2006 U.S. Dist. LEXIS 37255, 2006 WL 1582397 (D.R.I. June 6, 2006) *Daami v. Gonzales*, No. 0 5-3667, 2006 U.S. Dist LEXIS 37539, 2006 WL 1457862 (D.N.J. May 22, 2006); *Astafieva v. Gonzales*, No. C 06-04820 JW, 2007 U.S. Dist LEXIS 28993 (N.D.Ca, April 3, 2007); *Omeiri v. District Director, Bureau of Citizenship and Immigration Servs.*, 2007 WL 2121998 (E.D. Mich, July 24, 2007); and *Andron v. Gonzales*, 487 F.Supp.2d 1089 (W.S. Mo. 2007).

The 4th circuit court in *Etape v. Chertoff,* supra, approved the 120-day period starts to run after the interview because, as it stated and found, many of the CIS's investigatory functions take place before or during that initial naturalization examination and also determined that the district court has exclusive jurisdiction over a naturalization application after CIS failed to act within 120 days of the examination.

The analysis in *Mansoor v. Chertoff*, supra, involved a *Chevron* analysis of Section 1447(b). The court found that the plain language of the statute indicates that the term "examination" refers to the initial interview. The decision noted the

distinct manner in which Congress and the CIS use the term "investigation," which refers to the interview and the background check, as opposed to the term "examination" which comprises only the initial interview. The decision emphasized that section 1447(b) counts the 120-day period from "the date on which the examination is conducted." (Quoting 8 U.,S.C. §1447(b)). The decision concluded that the choice of the word "date" indicates that the term "examination" refers to a discrete event.

*Attisha, supra,* decision was based upon the word "examination" not being used in the law as being the same as the entire investigatory process and upon the regulations implementing section 1446 which clearly recognize the investigatory process as requiring a whole and "definitive response" from the FBI, which must be completed before the initial "examination" on the application be held, 8 C.F.R.§335.3 which states that the decision to grant or deny the application be made at the time of the initial "examination" and 8 C.F.R. §335.6(a) which states that the applicant for naturalization shall be deemed to have abandoned his or her application if he or she fails to appear for the "examination".

The 9th Circuit Court of Appeals in the case of *United States v. Hovsepian,* 359 F.3d 1144, 1161 (9th Cir. 2004) (en banc) has held the same as the majority of the district courts as has the 5th Circuit in the case of *Walji v. Gonzales,* No. 06-20937,     F.3d     , (5th Cir. Sept.14, 2007) when the circuit court withdrew its prior initial decision in that case and found that the 120 day period started to run at the time of the interview.

Plaintiff further suggests to the Court that Defendant CIS conceded the merits of the legal claim herein brought is supported by the following government memorandums. Counsel attaches hereto an Interoffice Memorandum issued by Michael Aytes, Acting Associate Director, Domestic Operations, of the CIS of-

date April 25, 2006, wherein policy of the CIS in having interviews was changed to one of not scheduling them until it had obtained the results of both the initial criminal fingerprint check and the separate name check. Counsel also attaches a photocopy of a Report of the CIS Office of Inspections and Special Reviews of-date November 2005, which discussed the issue FBI name checks on page 24. Significant are the then existing numbers then existing and the admission that one option available to the CIS is to have the FBI "expedite" the name check when requested. Counsel also attaches the CIS memorandum of January 2005 which discusses the Defendant FBI Name Check Expedite Criteria. And finally, counsel attaches the title page and pages 23 thru 26 of the CIS Ombudsman Annual report for the year 2006, which explains and clarifies the various security checks involved in the immigration process. (Page 24). It explains that the CIS is a paying customer to the FBI in these matters and states as follows:

> ". . .(t)he name checks are not sought by the FBI as part of ongoing investigations or from a need to learn more about an individual because of any threat or risk perceived by the FBI. Instead the name checks are a fee-for-service that the FBI provides to the USCIS at its request. Moreover the FBI does not record any additional information about the names USCIS submits and does not routinely take further action. Instead, the FBI reviews its files much like a credit reporting entity would verify and report on information to commercial entities requesting credit validations."

Counsel attaches these memorandums to these suggestions, marks them as Joint Exhibit ONE and incorporates them herein as if more fully set forth.

The significance of the memorandums are that options to complete the name check are available to the Defendants, if they only so desired to exercise them .

## PLAINTIFF IS ALSO ENTITLED TO RELIEF
## UNDER THE PROVISIONS OF THE MANDAMUS ACT AND
## THE ADMINISTRATIVE PROCEDURE ACT

The Mandamus Act gives the federal district courts original jurisdiction *"over any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff."* 28 U.S.C. §1361. Likewise the Administrative Procedures Act (APA), at 5 U.S.C. §701 et seq., in combination with 28 U.S.C. §1331, provides the federal district courts with the jurisdiction to *"compel agency action unlawfully withheld or unreasonably delayed."* See *Hu v. Reno,* Case No. 3-99-CV-1136-BD, 2000 WL. 425174 (N.D. Tex. Apr. 8, 2000). The CIS has a non-discretionary duty to adjudicate Plaintiff's N-400 within a reasonable time. This reasonable time is clearly mandated in 8 U.S.C. §1447(b) as being 120 days. In this case almost 5 1/2 years (almost 1950 days) has elapsed since Plaintiff's interview. Other courts have held that in cases such as this, the inaction or refusal of the government to act gives subject matter jurisdiction under the Mandamus Act or the APA. *Aelkhatib v. Bulter*, No. 04-22407, 2005 US Dist. Lexis 22858 (S.D. Fla. June 6, 2005); *Paunescu v. INS*, 76 F.Supp.2d at 901 (N.D. Ill, 1999); *Yu v. Brown*, 36 F.Supp.2d 922, 925 (D.N.M. 1999); *Agbemaple v. INS*, No., 97-8547, 1998 WSL 292441 (N.D. Ill, May 18,1998) (*"a contrary position would permit INS to delay indefinitely"*); *Iddir v. INS*, 301 F.3d 492, 500 (7th Cir., 2002) (*"the relevant statutes and regulations confirm that the INS did have the duty to adjudicate the appellants' applications in a reasonable period of time"*); and *Abdel Razik v. Perryman*, No. 2-CV-05189 (N.D. Ill. Aug 6, 2003).

The provisions of 8 U.S.C. §1571(b) clearly sets forth the *is* parameters of reasonableness in immigration adjudications. It provides that "... *It is the sense of Congress that the processing of an immigration benefit application should be*

*completed not later than 180 days after the initial filing of the application."* The CIS should not be allowed to justify its inaction or refusal to act in connection with Plaintiff's properly filed and otherwise processed  immigration application to the inaction of another governmental agency.

If this Honorable Court finds that it would prefer not to initiate a judicial review of Plaintiff's N-400 application under §1447(b), Plaintiff suggests that it can compel the defendant FBI to complete Plaintiff's pending background check and for the CIS to adjudicate Plaintiff's N-400 application.

## CONCLUSION

The plain language of Section 1447(b) states that this Court has two options once it takes up this matter and that is to either to decide the naturalization application de novo and administer the oath of naturalization to the plaintiff, or to remand the matter to the CIS with appropriate instructions. In this case, if the Court decides to remand the matter to the CIS, its instructions should be clear and should mandate immediate adjudication or a limited time frame for a decision to be made. This matter has already had a life of over five years past the 120 days specifically mandated by Congress for the adjudication of this application. Had Congress intended that the CIS had the uncontrolled authority and discretion to delay adjudications after the interview, it would have so granted that authority to it.

This is not a case where national security is an issue. This is a case where the Plaintiff has resided in this country for over 23 years with his wife and children and he has a vested interest to become an United States citizen. He has met all of the necessary requirements, having been a lawful permanent resident for the required amount of time and having demonstrated to the satisfaction of the CIS that he is a person of good moral character and otherwise qualified for citizenship.

This is a case where the government has no valid excuse or any excuse within the scope of applicable law to refuse to adjudicate Plaintiff's filed application.

This is a case where there are no genuine issues of material fact. Defendants cannot seriously challenge any of the facts necessary to question Plaintiff's right to a decision on his application and the greater majority of courts reaching the issues involved in this case have found jurisdiction to grant relief to applicants.

Plaintiff requests that this motion for summary judgement be granted and a hearing on the pending form N-400 application for naturalization be ordered or in the alternative, the case remanded to the CIS with specific instructions that the CIS adjudicate the application within a specific period of time, which counsel for Plaintiff suggests that 30 days would be appropriate.

Plaintiff is entitled to relief under the provisions of 8 U.S.C. §1447(b), under the Mandamus statute, 28 U.S.C. §1361 and under the Administrative Procedures Act 5 U.S.C. §701 et seq.

ROBERT FRAGER PC.

/s/ Robert Frager

by ROBERT FRAGER
Second Floor Valley View Bank Bldg.
4550 Belleview Ave.
Kansas City, MO   64111-3506

Attorney for Petitioner

(816)756-5800
FAX (816)756-3001
E-mail: rfragerlaw@aol.com
Mo. Bar No. 17734
KS. Dist. Ct Reg. No.70726

## CERTIFICATE OF SERVICE

I hereby certify that on this date, the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to Christopher Allman, Email: chris.allman@usdoj.gov.

I further certify that on this date the foregoing document and the notice of electronic filing were mailed by first-class mailing to the following non-CM/ECF participants:

None

Dated this 5th   day of October, 2007.

/s/ Robert Frager

_____

ROBERT FRAGER
Attorney for Plaintiff

FARZIN AZIMA v. GERARD HEINAUER, et al.
Civil Action No. 07-2204-KHV

# JOINT EXHIBIT
# "ONE"

1) Memorandum issued by Michael Aytes, Acting Associate Director, Domestic Operations of the CIS of date April 25, 2006;

2) Report of the CIS Office of Inspections and Special Reviews of date November 2005

3) CIS Memorandum of January 2005 discussing FBI Name Check Criteria

4) CIS Ombudsman Annual Report for the year 2006

U.S. Department of Homeland Security
20 Massachusetts Avenue, NW
Washington, D.C. 20529



**U.S. Citizenship
and Immigration
Services**

## Interoffice Memorandum

TO:   Regional Directors
      Service Center Directors
      District Directors, Including Overseas
      Asylum Office Directors
      Fraud Detection Unit Chiefs
      National Benefits Center Director

FROM:   Michael Aytes
        Acting Associate Director, Domestic Operations

DATE:   APR 2 5 2006

SUBJECT:   Background Checks and Naturalization Interview Scheduling

As you know, consistent with our regulations, USCIS has not been scheduling naturalization interviews until we receive the results of the fingerprint checks that we conduct with the FBI, which we normally receive within a few days after the applicant appears for fingerprinting. We do not approve a naturalization application without first resolving all background checks concerning the applicant. For purposes of judicial economy, we will promptly cease even to schedule any naturalization interviews until all background checks have been completed in a particular case. This will mean cases will not be scheduled for interview until we have both the results of the fingerprint check and the results of the separate FBI name check process.

The FBI name check is another background check normally used in naturalization cases. 82% of FBI name checks are resolved within a few weeks. 99% are resolved within six more months. Unfortunately, the FBI name check in the remaining cases can sometimes take months and in rare instances years to resolve.

Naturalization adjudications are subject to a unique law, Section 336(b) of the Immigration and Nationality Act. That law allows an applicant to bring a lawsuit in federal court and allows the court to take over jurisdiction of the case if USCIS has not adjudicated the case within 120 days from when the examination was conducted. Thus, applicants in less than 1% of cases awaiting an FBI name check by that point have sometimes sought to bring such a lawsuit.

Not surprisingly, even when such lawsuits are brought, courts have not been approving the naturalization applications of applicants whose background checks have not been resolved. A few courts facing four-year old cases have given USCIS and FBI a deadline within which to complete the check, but the government has been able to complete the process within the court ordered deadline.

Subject Name:  Background Checks and Naturalization Interview Scheduling
Page 2

USCIS is steadily reducing its processing backlog toward a six months average processing time for naturalization cases.  As USCIS has, due to your hard work and accomplishments, made progress in backlog reduction, a disparity has grown between USCIS normal processing time and the time it takes the FBI to complete its records check on the less than 1% of cases that require special FBI attention.

The applicants affected by those delays from the FBI name check process have increasingly begun to file lawsuits asking federal courts to decide naturalization cases that are not yet ripe for review because the background checks are not yet completed and resolved.  USCIS will vigorously defend those lawsuits and is confident courts will not make decisions that frustrate national security.

Meanwhile, USCIS will begin imposing restraints on its processes to prevent the scheduling of a naturalization interview until all background checks, including the FBI name check, are completed.  A priority information technology service request has been submitted to the OCIO's office to impose this block on interview scheduling.

While this will not necessarily eliminate mandamus actions, it will eliminate attempts to shift cases to the court before they are ripe for adjudication.  USCIS also continues to work with the FBI to seek shorter times for FBI name checks.

This change in procedures will only affect naturalization interviews.  It will take effect when the needed systems change is made, and will be prospective only.  As soon as possible you will be notified when that change will take effect.  When implemented, this change will clearly result in a temporary decrease in the number of cases available for scheduling, so field managers will need to begin to plan to use the resources not needed for these interviews on continued cases and other work.

Cc:     General Counsel
        International Operations
        National Security and Records Verification

# DEPARTMENT OF HOMELAND SECURITY

## Office of Inspector General

## A Review of U.S. Citizenship and Immigration Services' Alien Security Checks



### Office of Inspections and Special Reviews

**OIG-06-06**

**November 2005**

mala fide applicants is a matter of chance. In 2002, incomplete screening led a USCIS adjudicator to approve naturalization for a member of a terrorist group.[29] Though there are few reports of USCIS approving benefits for the mala fide, incomplete checks present a security vulnerability that USCIS should address through targeted improvements to management controls on check completion.

## USCIS is implementing solutions to complete stalled cases

USCIS has an established structure for handling cases with security check hits and addressing national security, public safety, and fraud concerns. However, for a fraction of cases, slow, inconclusive, or legally inapplicable security check results can cause application processing to stall for months or even years. These delays can interfere with USCIS' concluding national security and public safety hits with timely denials or referrals to law enforcement. In addition, stalled cases decrease operational efficiency by reducing productivity and contributing to hundreds of lawsuits against USCIS. USCIS is pursuing several solutions to mitigate these effects and close stalled cases.

Staff described four primary ways that security checks could stall processing on a case:

- **Pending FBI name checks.** Unlike other USCIS checks that return results within a few days at most, the FBI name check takes more than a month to complete for six percent of submissions. For one percent, the FBI takes more than six months to compile the hit information and verify that the initial hit matches the identity of the applicant. In December 2002, USCIS (then INS) resubmitted 2.4 million applicant names for expanded checks,[30] almost double the number USCIS typically submits in a year's time. As of February 2005, USCIS reported 171,428 FBI name checks pending, including approximately 8,500 remaining from the December 2002 rerun. USCIS may pay the FBI double to "expedite" up to a few hundred FBI name checks per month. USCIS restricts these requests to certain cases, such as when the alien is about to become ineligible due to age, the applicant files writ of mandamus lawsuits to compel USCIS to complete adjudication,

---

[29] *Review of the Circumstances Surrounding the Naturalization of an Alien Known to be an Associate of a Terrorist Organization*, INS Office of Internal Audit, December 13, 2002.
[30] Ibid. In response to an incident that involved processing benefits for a member of a terrorist group, INS added searches of the FBI's reference file to searches of the main investigation file.



U.S. Department of Homeland Security
970 Broad Street
Newark, NJ 07102

U.S. Citizenship
and Immigration
Services

January 2005

## NOTICE

### FBI Name Check Expedite Criteria

In order for USCIS to expedite an FBI Name Check request, one of the following criteria must be established:

- Military deployment must be imminent

- Age-out benefits (not covered under the provision of the Child Status Protection Act)

- Writ of Mandamus – lawsuit pending in Federal Court

- Immigration Judge cases – grant of lawful permanent residence

- Compelling reasons as provided by the requesting office (i.e. critical medical condition) assessed on a case by case basis

On March 16, 2005, Secretary Chertoff outlined a risk-based approach to homeland security threats, vulnerabilities, and consequences:

> Risk management must guide our decision-making as we examine how we can best organize to prevent, respond, and recover from an attack . . . . Our strategy is, in essence, to manage risk in terms of these three variables – threat, vulnerability, consequence. We seek to prioritize according to these variables, to fashion a series of preventive and protective steps that increase security at multiple levels.[45]

In addition, the IG recommended that USCIS establish a comprehensive, risk-based plan for the selection and completion of security checks.[46]   Despite Secretary Chertoff's statement and the IG's recommendation, USCIS recently stated that "[r]esolving pending cases is time-consuming and labor-intensive; some cases legitimately take months or even several years to resolve."[47]   Unfortunately, the process is not working and consideration should be given to re-engineering it to include a risk-based approach to immigration screening and national security.

> *RECOMMENDATION  AR 2006 --04*
>
> *The Ombudsman encourages USCIS to adopt the recommendation from the DHS Secretary's Second Stage Review to establish an adjudication process in which all security checks are completed <u>prior</u> to submission of the petition or application for an immigration benefit.*

### G.   Funding of USCIS

The manner in which USCIS currently obtains its funding affects every facet of USCIS operations, including the ability to:  (1) implement new program and processing initiatives; (2) begin information technology and other modernization efforts; and (3) plan for the future. USCIS is required to recover the full costs of operations with funds generated from filing fees. However, the process by which USCIS can change fees hampers its ability to receive fees commensurate with the actual costs to process particular application types.  As discussed below, USCIS does not enjoy financial flexibility and thus finds itself making difficult operational decisions to provide services while meeting financial goals.[48]

---

[45] DHS Secretary Michael Chertoff, Prepared Remarks at George Washington University Homeland Security Policy Institute (Mar. 16, 2005); http://www.dhs.gov/dhspublic/display?theme=44&content=4391&print=true.

[46] *See generally* DHS IG Report "A Review of U.S. Citizenship and Immigration Services' Alien Security Checks."

[47] *See* USCIS Fact Sheet, "Immigration Security Checks – How and Why the Process Works" (Apr. 25, 2006); http://www.uscis.gov/graphics/publicaffairs/factsheets/security_checks_42506.pdf.

[48] *See generally* GAO Report "Immigration Application Fees:  Current Fees Are Not Sufficient to Fund U.S. Citizenship and Immigration Services' Operation," GAO-04-309R (Jan. 2004); http://www.gao.gov/new.items/d04309r.pdf.



Citizenship and Immigration Services Ombudsman

# Annual Report 2006

**Submitted to:**

**United States Senate**
**Committee on the Judiciary**

**United States House of Representatives**
**Committee on the Judiciary**

**June 29, 2006**



Homeland
Security

*...nship and Immigration Services Ombudsman*          **Annual Report to Congress June 2006**

Figure 7:  USCIS Fee Revenue for FY 05



Note:  The I-765 Employment Authorization revenue attributed to green card applicants reflects the Ombudsman's estimate of EADs issued to those applicants.  The data used to generate Figures 6 and 7 do not directly match data used to generate Figure 5. To maintain consistency with the Ombudsman's 2005 Annual Report at p. 8, Figure 7 was generated using the same formulas as in last year's revenue chart.  Better reporting of certain data led to a refinement in the calculations, which were used to generate Figure 5 above, as explained in Appendix 3.  The percentage difference in the calculated values is minimal.

USCIS' response to the 2005 Annual Report stated that the agency is "taking steps to ensure that interim documents are not provided to applicants who have not cleared basic security checks or who have not provided the essential evidence of eligibility for permanent residence."[41] While this may appear to deal with the issue, it is only a short-term approach.  EADs are not the problem.  Rather, they are symptoms of inefficient green card application processes that, if corrected, automatically would reduce the need for USCIS to issue EADs except for the exceptional circumstance.  Moreover, reducing the number of applications for interim benefits allows USCIS to allocate staff to tackle backlog elimination and prevention efforts.

### F.      Name Checks and Other Security Checks

FBI name checks, one of the security screening tools used by USCIS, significantly delay adjudication of immigration benefits for many customers, hinder backlog reductions efforts, and may not achieve their intended national security objectives.[42]

---

[41] USCIS' Response to the Ombudsman's 2005 Annual Report (Mar. 15, 2006) at 12.

[42] The Ombudsman's 2005 Annual Report (at p. 11) included a discussion of the pervasive and serious issue of background and security checks.

Currently, USCIS conducts several security checks to: (1) determine whether applicants have a history of criminal or terrorist activity that would make them ineligible for a benefit; and (2) notify law enforcement agencies of the presence and intentions of individuals who might be of interest. The Ombudsman receives numerous inquiries about FBI name check delays. During the reporting period, processing delays due to FBI name checks were an issue in 15.7 percent of all written case problems received. Stakeholder organizations and USCIS personnel across the country also regularly raise the issue of FBI name check delays as the most pervasive problem preventing completion of cases.

> **CASE PROBLEM**
>
> *The principal applicant and his wife (the derivative beneficiary) filed their employment-based green card applications in October 2001. At the time of inquiry with the Ombudsman in March 2006, their applications remained pending due to FBI name checks.*

> **CASE PROBLEM**
>
> *An applicant filed a naturalization application in March 1999 with a USCIS service center that had jurisdiction over the case. In August 2003, USCIS transferred the application to the applicant's local USCIS district office for the applicant to be interviewed. The interviewing officer requested additional evidence at the interview, which the applicant provided in a timely fashion. When the Ombudsman received the inquiry in April 2006, the application remained pending due to an outstanding FBI name check and additional security checks.*

The FBI provides information to USCIS as a paying customer on anyone who is the principal subject of an investigation or is a person referenced in a file. USCIS adjudicators and the Fraud Detection and National Security (FDNS) unit use this information to determine if applicants are ineligible for benefits. The name checks are *not* sought by the FBI as part of ongoing investigations or from a need to learn more about an individual because of any threat or risk perceived by the FBI. Instead, the name checks are a fee-for-service that the FBI provides to USCIS at its request. Moreover, the FBI does not record any additional information about the names USCIS submits and does not routinely take any further action. Instead, the FBI reviews its files much like a credit reporting entity would verify and report on information to commercial entities requesting credit validations.

Some types of background and security checks return results within a few days and do not significantly prolong USCIS processing times or hinder backlog reduction goals. However, while the overall percentage of long-pending cases is small, as of May 2006, USCIS reported 235,802 FBI name checks pending, with approximately 65 percent (153,166) of those cases pending more than 90 days and approximately 35 percent (82,824) pending more than one year.[43]

---

[43] *See* USCIS FBI Pending Name Check Aging Report (May 17, 2006).

In November 2005, based on earlier data, the DHS IG reported that FBI name checks take more than a month to complete for six percent of submissions and more than six months to complete for one percent of submissions.[44]  The longer time is required because the FBI must conduct a manual review of its files to verify that the applicant is actually the subject of an FBI file.  This review can include the FBI reporting on fragments of names on people who are not necessarily central or directly related to a case.

USCIS has limited capability to produce reports detailing the status of long-pending FBI name check cases.  In addition, USCIS systems do not automatically indicate when a delayed name check is complete and the case can be adjudicated.  Often, this leads to a situation where the validity of other checks expire before USCIS reviews the case.  Those checks then need to be reinitiated, adding financial and time costs for applicants and USCIS.  The high volume of FBI name check cases and the relatively limited resources devoted to background and security checks are major problems.  The FBI's manual processing exacerbates delays.  USCIS' planned Background Check Service (BCS), a new IT system that will track the status of background and security checks for pending cases, needs to be implemented as soon as possible.  The Ombudsman looks forward to more information from USCIS on the BCS implementation schedule.

Considering the cost and inconveniences caused by the delays, the value of the FBI name check process should be reexamined.  In almost every name check case that the FBI conducts for USCIS, the foreign national is physically present in the United States during the name check process.  Thus, delays in the name check process actually prolong an individual's presence (albeit in an interim status) in the United States while the check is pending.  In that sense, the current USCIS name check policy may increase the risk to national security by prolonging the time a potential criminal or terrorist remains in the country.  Further, checks do not differentiate whether the individual has been in the United States for many years or a few days, is from and/or has traveled frequently to a country designated as a State Sponsor of Terrorism, or is a member of the U.S. military.  Most individuals subject to lengthy name checks are either already green card holders or have been issued EADs allowing them to receive Social Security cards and state drivers' licenses.  Additionally, most green card applicants are also eligible to receive advance parole to enable them to travel outside the United States and return as long as their cases are pending, which can be for years under the current process.

USCIS requires that the FBI name check be completed before issuing a green card.  However, in removal proceedings before an Immigration Judge, the judge will require confirmation of all background and security checks by DHS before the judge can grant any relief (for example, ordering USCIS to issue a green card).  Immigration and Customs Enforcement (ICE – another DHS agency) attorneys indicate to the judge that all background and security checks have been initiated.  The judge proceeds with issuing an order which grants green card status to the individual.  Based on this order, USCIS, as the producer of the actual card, must issue the green card despite the outstanding FBI name check.  These two policies need to be harmonized.

---

[44] *See* DHS IG Report "A Review of U.S. Citizenship and Immigration Services' Alien Security Checks," OIG-06-06 (Nov. 2005), at 24; http://www.dhs.gov/interweb/assetlibrary/OIG_06-06_Nov05.pdf.